Good morning, Your Honors. May it please the Court, my name is Keisha Blaze, and I am here on behalf of the Commonwealth Casino Commission. I would like to reserve three minutes for rebuttal. Thank you. Considering that the arbitration proceedings in this matter have recently concluded, I would like to begin by briefly addressing this issue. A determination by a court as to what is and is not arbitrable under the Casino License Agreement remains critical. The District Court's decision was overly broad and substantially hindered the Commission's ability to exercise its regulatory powers. The Commission's revocation proceedings against IPI are currently state, but could proceed immediately with respect to the claims that are not arbitrable. Ms. Blaze, did the Commission or anyone seek a stay of the District Court's order? Initially, the Commission did seek a stay with the Arbitration Association prior to the paneling of an arbitrator. That was denied. The Commission did decide that we would like to proceed with the arbitration and also pursue this appeal before this Court. But you didn't seek a stay of the District Court's order? No. How is the Commission irreparably harmed by having submitted to this arbitration proceeding? Because the issues that were submitted into arbitration we believe are not arbitrable. And the District Court's order did not clarify the Commission's orders or the authority of the Commission as to the scope of the arbitration agreement. We have five pending actions, we have imminent actions that are forthcoming, and the Commission does not understand the order and how it applies to their authority to pursue the enforcement actions. As I understand it, whatever the arbitrator decides is non-binding, isn't that correct? That's correct. So wouldn't the Commission still be free to move forward with its revocation proceeding and just continue apace? Well, after the parties get their award, it is subject to de novo review before the CNMI Superior Court, and then if the parties would like to appeal before the Supreme Court. So this could take years. If this Court decides that some of these claims are not arbitrable, it goes right back into the Commission's hands to pursue the revocation proceedings and the rest of the administrative procedures process. But if it's non-binding, why does that preclude the Commission from being able to proceed with a revocation proceeding? Because the terms of the CLA require that the parties, well not require, but give the option to submit the decision to de novo review before the Superior Court. So it would not go back to the Commission after the award, it goes to the CNMI Superior Court. So it's out of the question. The cases that you presented that give us appellate jurisdiction are cases where they say that there's only a claim for arbitration. In this case, there's a claim for arbitration and there was a motion for preliminary injunction. So given that, does that change the fact that this is not a final decision for appellate jurisdiction purposes? We believe that this is a final decision that for appellate purposes, because there's nothing further for the District Court to do. Well wouldn't, like so when the arbitration is completed, wouldn't the District Court have to lift the stay or lift the preliminary injunction against the Commission? That's correct. We probably would have to submit to the District Court that we got an award and that the stay is lifted to proceed with the revocation proceedings or I mean inform the court that it is going to be pursued over before the CNMI Superior Court. So why doesn't that not make this not a final decision since there is something more for the District Court to do? I don't believe that, I don't think the Commission believes that informing the District Court is more for something that it needs. It's not substantive enough? Yes, it's not substantive enough, exactly. Okay. My second question is, and this is, I was surprised that this was not argued by the Commission at all, but the arbitration agreement says if the parties fail to resolve the dispute or dispute, parties may submit the dispute to the American Arbitration Association. So that's permissive. So it doesn't require the parties to submit the case to arbitration. The Commission doesn't believe that the issues in dispute are even arbitrable. It was the appellees that decided at the last minute, right the day before the revocation hearings, to submit this issue for TRO to eventually get the... But even if the issue was arbitrable, it seems to suggest that it's permissive of whether or not it's arbitrable. Like the parties have to agree. When you say may, it's not a command. The parties can decide not to submit it, correct? That is correct. However, one of our dispositive motions before the arbitrator are that there were certain conditions, precedents that weren't met, and that the Commission was more so blindsided as far as going into this arbitration. The TRO and the eventual injunction. But to Judge Bumute's point, if it's permissive or may, and the parties have to agree to submit to arbitration, and the Commission did so, I guess eventually, I'm having a hard time seeing how there's an irreparable harm that the Commission faced from having submitted to arbitration. The TRO and the preliminary injunction compelled the Commission into arbitration. We objected to it, but we would risk contempt if we didn't proceed with the arbitration hearings. I see. So then it's not permissive. Is it your view instead that if one party elects to take this to arbitration, then that would trigger that... Assuming an issue was arbitrable, that they would take it to arbitration in that case? Had IPI followed the conditions precedent, we could have agreed to go into arbitration or not together, but again, we were blindsided by the TRO a day before the revocation hearing, so we really didn't know what to do next. So how quickly did the District Court decide this? So they filed the motion the day before the revocation hearing, and then what did the District Court decide? So they filed the motion the day before the revocation hearings. A few days later, we were before the District Court, but the parties were also discussing settlement for about... So this was May that we got the TRO, and we were discussing settlement until about, I want to say August, and then we could not settle, so we decided to proceed with briefings with the preliminary injunction. Let me ask you a different question. Is this case moot? Now that the arbitration hearing has concluded, and I think there's some briefing to be done, but there's going to be an arbitral award or decision, is there anything left for this court to do with respect to that, given that it's about to come out? Absolutely. This case is not moot. Like you stated, that the arbitration is non-binding. Therefore, it doesn't bind the decision was so overly broad that it completely does not define the scope of the arbitration agreement. We also don't believe that any of the issues are arbitrable, and we're before this court for you to determine that. We don't believe that the District Court made any independent determination as to the requirements under the Federal Arbitration Act when there's a dispute between the scope of the arbitration, and that's why we're before this court. This court can decide to moot the arbitrator's decisions. I mean, binding or not, this court has the authority to bring those non-arbitrable issues back to the Commission. But I guess just to play it out as a practical matter, if suppose we agreed with you that the arbitration agreement was, or rather that force majeure is not an arbitrable matter in the context of revocation proceedings, what would happen then? We would send it back to the District Court to vacate an order to compel arbitration or something that already took place? I mean, that almost just seems to define mootness in that case because the arbitration proceeding already took place. The arbitration, yes, correct. The arbitration proceeding took place, and that was because we were compelled to do that. But if this court were to decide that certain claims were not arbitrable, whether through you or remanding it back down, then those issues would go back to the Commission. Regardless, like we said, we don't believe that any of the issues are arbitrable, but this court or the lower court can decide that some of them are. Therefore, we proceeded with that process. But in the event that this court or the lower court finds that some of them are non-arbitrable, then we can proceed with the revocation hearings. So we don't believe that any of this is moot. And also, the importance of no clarity of the scope of the arbitration agreement. Actions against IPI are imminent. They haven't paid the 2022 annual or like annual or casino license fees. We have no reason to believe that they're going to pay the 2023 license fees. So this is going to be a repetitious issue if the District Court's overly broad order does not define the Commission's... Maybe, but I'm not sure I understand why the Commission holds the view that you couldn't hold a revocation proceeding as a matter of, as an enforcement action, especially in the context of a non-binding arbitration. If it's non-binding, then why does it preclude the Commission from being able to proceed with a revocation proceeding and dealing with force majeure on its own terms, and then that proceeding going to Superior Court if either party chose to? I'm having a hard time understanding why that binds the Commission from being able to, or precludes the Commission from being able to hold this hearing. I think the objective of the Commission is to revoke IPI's casino license as soon as possible. And having to go through arbitration, get that award, and that being the CNMI Supreme Court, again, that could take years. This is time. And we're trying to get this decision, this decision either through this panel or through the District Court, that some of these issues can go straight to the Commission. Yes, we can hold a revocation hearing only after a court decides that certain issues are non-arbitrable, or only after the CNMI Supreme Court, perhaps, decides... So the prejudice you're talking about is the delay in waiting for the arbitration to be confirmed and be finished. That's correct. The one question I had is, the dispute, it seems to be on the applicability of the force majeure clause, and the Commission determined it does not apply to the claims against the casino, correct? And how... So say that, you know, that we... someone disagrees with that decision, that force majeure does apply to these claims, how can the parties bring... where can that be raised? Initially, the IPI can raise that before the Commission, and if... They've already said no, right? They've already said no. Okay, so then... So how can that be appealed? How does that decision get appealed? That actually is being appealed. It was affirmed before the CNMI Superior Court, and now it's before the CNMI Supreme Court as the 2020 revocation... sorry, suspension hearings, and we're waiting on a decision at this point for the 2020, and we... IPI could have raised that for... sorry, force majeure for the 2021 proceedings had it not been stated, and they still can. They're not precluded from doing that before the Commission. They still can, and they still can present it before the Superior Court and the Supreme Court, and so on. It just does not belong in arbitration. Isn't the reason they filed for the TRO and the District Court that the Commission, or somebody representing the Commission, filed a motion in limine to preclude them from even asserting force majeure defense at the proceedings? I mean, I mean, you say that they did this at the last minute. You're not expecting this, but it seems as if there had been some discussion between the parties for some time. You knew that they wanted to raise this defense. You filed a motion to preclude them from doing so, and so they were left with the remedy they sought, which was to preserve their ability to raise that defense. That's correct. A motion in limine was filed, and that was due to the fact that IPI didn't, said that they were going to present a force majeure defense, said that they were going to provide an expert, an expert report, and still had not, right up until the day before, or a couple days before the revocation hearing. So, the Commission had to do what it had to do, as far as filing the motion in limine, because we had no expert report. We had no designated expert, and that's what they planned to use to prove their force majeure defense. So you're not going to take the position that if they're in a revocation proceeding before the Commission, that they cannot assert the force majeure clause? They absolutely can. We also, between the parties, discussed withdrawing the motion in limine, and letting them, a day before the hearing, we informed IPI that we would withdraw, and that is in the record, that we would withdraw the motion in limine. So, how does, I'm trying to understand how this works procedurally. If the Commission has a revocation hearing, and issues an order, that can be presented to the Superior Court, and then appealed to the Supreme Court? That is correct. And if an issue goes to an arbitrator, that also can be presented to the Superior Court, and appealed to the Supreme Court? Not appealed, but submitted for de novo review, so a declaratory relief, perhaps, yes, and then that would go to the Supreme Court. So, it would just completely, it's out of the Commission's hands, and that's why this decision before this Court is very... But under both paths, it's out of the Commission's hands. After your revocation hearing, there's further review. So, I'm struggling to understand the delay that you're concerned about, because it's not as if the Commission can enter a revocation order, and that's the end of it, and can do this very quickly, and with no further review. The issue here is defining the scope of the arbitration agreement, and defining the scope of the Commission's regulatory authority. The decision should be in the Commission's hands, and that, regardless if it's going to be appealed before the Supreme Court or the Superior Court, the regulatory body for IPI is the Casino Commission. Therefore, all the enforcement actions and decisions statutorily should be made by the Casino Commission. So, we do not agree that they belong in front of an arbitrator. They're not arbitrable. They're not... None of the issues are pursuant to the CLA. They're statutory and regulatory. Anything, what issues are arbitrable? Because there is an ADA clause in your licensing agreement. So, what can be arbitrated? We don't believe that any of the present issues can be arbitrated, because none of them stem from the casino license agreement. They all are for statutory and regulatory violations. Which are adopted into the licensing agreement. They are referenced and incorporated... Well, one of the statutes, the annual license fee, is incorporated into the casino license. However, it is mandated by statute, and that predates the... There's nothing that says that just because a statute is incorporated into a contract, it therefore is subject to a contractual defense. But the rest, the remaining, the casino license fee... Sorry, the casino regulatory fee is not even mentioned in the CLA, or the Commission Order 2020-003. None of those things are in the CLA. We've taken you over time, and no, it's not your fault, and used all your time for rebuttal. So, I'll give you a couple of minutes on rebuttal. Thank you, I appreciate that. All right, we have Mr. Salver on video. Can you hear us? I can hear you well. Can you hear me? Yes. Great. Good morning. May it please the Court, Samuel Salyer on behalf of Plaintiff Appellee Imperial Pacific International. This case is an appeal from a district court order compelling arbitration, and as your honors know, the evidentiary hearing in that arbitration was held and concluded two weeks ago today. The issue that's before you today is the arbitrability of the party's dispute, and our position is very simple. The matter was properly submitted to the arbitrator. The CCC's questions about arbitrability were also submitted to the arbitrator, and at this point, the proper result is to affirm the district court's decision and Mr. Salver, can I just clarify? So, the question of arbitrability was also submitted to the arbitrator? The issues that the CCC has raised before this court, and in its briefing, were submitted to the arbitrator. There's two different ways that the parties have indicated their intent to have these threshold questions of arbitrability decided by the arbitrator. The first is in the language of the CLA itself. Article 30 of the CLA is a dispute resolution provision, which includes an arbitration clause at subsection F. That states that if the parties fail to resolve a dispute, they may submit the dispute to the American Arbitration Association for non-binding arbitration in accordance with applicable rules. So, the CLA selects... Can I stop you there? It says may, which is non-arbitrated. So, I don't read the dispute resolution clause that way. Looking at the dispute resolution provision lays out an entire process to address disputes between the parties, starting at A, B, C, D. This is on page ER 283. And all of these use must language. The parties must maintain good And then, section F is, if they fail to resolve the dispute, parties may submit the dispute to the AAEA. Right. Doesn't that count against you? Doesn't that count against you? I don't think so. In other parts of the contract, it uses mandatory language, and then when it's talking about arbitration, it uses permissive language. I believe it's permissive for either party. So, if the parties are not able to resolve their dispute, they may submit this to arbitration. And I don't believe that the use of this permissive language restricts the ability of either party to initiate arbitration. And I would also note that the CCC has not... So, basically, you're saying we should read may as shall in F. I don't believe it's a requirement. I believe if the parties were unable to resolve their dispute, they could allow this to move forward with the CCC holding a hearing. However, what IPI has done here is to assert its right to the dispute resolution clause. And if I may, I'd like to actually elaborate on this because I think I might address some of your questions to my colleague. The dispute resolution clause doesn't end with arbitration. It continues, as noted, if either party disagrees with the decision of the arbitrator, within 30 days, they can submit that issue to the Commonwealth Superior Court. And as Your Honor noted, whether the case starts with the dispute resolution clause, it could end up in Commonwealth Superior Court. The key distinction is the standard of review. If it goes through the CCC's proceeding, that's entitled to deference at the court. What IPI bargained for and obtained in this dispute resolution provision is the ability to submit a dispute to arbitration and then obtain de novo review of that decision at the Superior Court. So it's a different bargain, and it's a facet of the party's agreement. So let me ask, how, why is it entitled to deference if it's a non-binding decision? What, what, what, how would one enforce the non-binding language in that context? Isn't it just a, I mean, it may provide helpful guidance, but why, why is it subject to deference by the Superior Court or anyone else? I think that's right. And perhaps I misspoke. If the CCC's regulatory administrative body for a decision, that decision would be entitled to deference under the CNMI Administrative Procedures Act. If the dispute goes first to arbitration and then proceeds into CNMI Superior Court, that would be reviewed de novo. So there is a difference in the standard of review that would be applied. I agree with you. It would be a matter of what, what would be persuasive on the court. And that's what the parties bargained for here, to have a neutral party hear the dispute and issue, hopefully, a persuasive award. Let me ask this. This arbitration hearing just concluded. Was one of the questions posed to this arbitrator whether a force de jure defense is an arbitrable dispute? Was that something that this arbitrator is going to decide in addition to maybe other questions? Yes. And I would point you to the joint statement of agreements that the parties entered. This is at MJN 71, which was submitted as an objection regarding arbitrability, regarding the scope of the arbitration, the same objections that it now presents to this court. However, the CCC went on to agree, and now this is at the top of page MJN 72, these issues can be resolved through dispositive motions. The CCC, my colleague, Ms. Blais, said that the CCC's motion for a stay was denied. That's incorrect. Their motion for a stay was withdrawn to allow them to present these arguments to the arbitrator. I'm not sure you're answering my question. What I'm specifically asking is, is this arbitrator, has this arbitrator been asked to decide a question of arbitrability, whether a force de jure defense is subject to arbitration or not? Not the merits, but the arbitrability of that question. Yes, that question has been posed to the arbitrator. The arguments that the CCC is presenting to this court have also been made to the arbitrators. And we believe that that's clear indication that the CCC, that constitutes clear and unmistakable evidence of the CCC's intent for the arbitrator to rule on those issues of arbitrability. This is a question that's been addressed recently in very analogous cases in the Second and Fifth Circuits. In the Fifth Circuit, the Suncoast Resources case, one of the parties to the arbitration agreement, Suncoast, argued that the court could rule on a gateway issue rather than the arbitrator. However, the Fifth Circuit looked at the party's conduct during arbitration, noted that that gateway question had been submitted to the arbitrator, and the party did not once suggest to the arbitrator that he had no authority to decide the gateway issue. Indeed, in a scheduling order, Suncoast had agreed— Counsel, why doesn't subsection I govern this case? It says, this process shall not be applicable to license suspension revocation proceedings, as shown in section 31 below. And this was a license suspension revocation proceeding. So first, I would argue that the parties have agreed to submit a dispute regarding the scope of the arbitration agreement to the arbitrator. They did that first by selecting the AAA's rules in the agreement, and second, by actually arguing that and putting that question before the arbitrator. Well, that shouldn't count. That second part shouldn't count because that happened because they were compelled to do that. So the rules might be—that So I don't—I'm looking at the CLA section 31, the separate section that governs license suspension or revocation proceedings. That requires a material breach for the part—for the CCC to suspend or revoke the license. The first and probably most operative form of material breach is subsection A under 31, failure to pay any amount due and payable. The dispute here is that IPI believes, based on its force majeure defense, there is no amount that's due and payable. So that's a dispute about whether there's a material breach that happens before you get— Wouldn't that be decided during the revocation hearing? I believe that's a separate question. It's a separate dispute. And this is something that the district court considered in its order. It looked at, the parties had negotiated a force majeure clause, and they negotiated this dispute resolution clause that gives them the opportunity to assert—to address disputes through an AAA arbitration. Just so you're aware, your screen is frozen, but we can hear you fine. That sounds like more important. Probably right. Okay, so then—so your argument then is, notwithstanding the language of this agreement, the invocation of the AAA rules means that we have to kick the question of arbitrability to the arbitrator. I think there's two reasons why you have to kick the questions of arbitrability to the arbitrator. The first, the invocation of AAA rules, and not just the AAA rules, the parties also reaffirmed the selection of the AAA rules at the outset of this arbitration. And then second, the parties' conduct during the arbitration, which was entirely consistent with their intent to submit questions— By the way, your video is back, but—so just the AAA rules, it doesn't actually say—it doesn't specifically invoke the AAA rules. Where is that? So I'm referring to the language that selects that the dispute will be submitted to the American Arbitration Association for non-binding arbitration in accordance with applicable rules. Yeah, and limited by the terms—and limited by the terms applicable rules. What—that's not a specific invocation of AAA's rules, is it? Is that what you're arguing? I believe it is, because it specifies the AAA. It refers to the applicable rules, and I can point you to where we've included the AAA rules at—beginning at MJN 83 of our— Oh, I think—I think in this agreement, I read it as selecting the applicable rules of the AAA, and I also think that the parties reaffirmed the selection of that rules in this very arbitration. I mean, one of the issues— And then more over their conduct and— You didn't raise this argument before the district court below, did you? We argued that— The particular argument about the—that we should construe paragraph F in accordance with applicable rules was tantamount to a delegation clause where the arbitrator would decide these questions. That argument wasn't raised before the district court, was it? I don't believe that was explicitly raised before the district court. We did argue that questions of arbitrability were proper to be designated to the arbitrator, and I think that the district court's decision was, in fact, consistent with that. The district court, in its decision, where it discussed the provision related to license—excuse me. So, the district court, where it addressed the—the application of the—and the party's likelihood of success on the merits, where it applied the force majeure defense to the Section 30 arbitration provision, that came in the section of the district court's order that discussed IPI's request for a preliminary injunction. So, it—it found that IPI was likely to succeed on the merits, but it reserved that issue for the arbitrator. I—I—consist—you know, following up on Judge Momota's question, paragraph I, I'm—I'm not sure how it isn't nullified by your reading, because if it says this process shall not be applicable to license suspension and revocation proceedings, and this force majeure defense is coming up in the context of a defense to a revocation proceeding, how does the CLA not exclude the force majeure in this context? I—I might agree that in other contexts where it's—it does not involve suspension and revocation, it might—it might be an arbitrable dispute, but how do you give effect to paragraph I, or even the definition of what a dispute is, under your reading? I think the dispute here is about whether there has been—whether there is an amount due, and so then what—if that amount is not paid, whether there's a material breach. And—and to answer your question about if that comes up in the course of a suspension or revocation proceeding, I think that's the—the question that the district court grappled with, and these were the arguments advanced below that. Yeah, but the district—the district court had an analysis that somehow a different reading would nullify the force majeure defense, but I'm not sure how that could be the case, because as—as questioning has asked, a force majeure defense could be brought up in a revocation hearing context. It doesn't nullify the defense, it just changes the forum where the defense could be raised. So I—I'm trying to understand how paragraph I could be given effect under this construction you're giving it. I think—and I'm wary that I've gone over my time, but I'll try to answer briefly. I think that this—this reference in paragraph I to the license suspension or revocation proceeding needs to be read holistically. If you look at the—after the lettered subsections in section 31, it states that in the occurrence of a material breach, the Commonwealth may but shall not be required to suspend or revoke the license agreement. So this is an issue of discretion for the regulatory body, the sort of discretionary issue that's not appropriate for an arbitrator. However, a fact-based decision about—or a legal decision about the application of the force majeure defense is something that is within the context of a dispute that could be submitted to an arbitrator. So I think that the dispute about whether there's been a breach is something that is—is properly within 30, whereas the CCC's determination upon the finding of a breach about what remedy it would like to impose, that's something that is not subject to arbitration. Okay. Just one more question, I'm sorry. Of course. So go back to your argument of the—that there's a delegation caused by reference to the AAA rules, although I think that's somewhat ambiguous. But it does also say that it's limited by the terms of this license. So even if there is a delegation, why shouldn't we read it in light of the limitation in subsection I? Well, I think the same argument would apply in subsection I. I think the subsection I is a limited exemption related to the discretion that can be exercised by the CCC. The disputed issue here is really a dispute about the application of section 25. And so I don't read that limitation as preventing IBI from exercising its bargain for rights under section 30 to obtain arbitration of that dispute. No, I guess my point is that even if we can see that there is a delegation clause to the arbiter, it seems like that, limited by the terms of this license, carves out anything in subsection I from that delegation clause. So I would say then that if you believe that the decision of whether these issues are within the scope and are arbitrable comes to the court rather than being delegated to the arbitrator, I think the language of section 30 is quite broad. It refers to any and all disagreements between the parties as to the terms or requirements of the license agreement. With these narrow exemptions being subject to the dispute resolution provision. So I believe even in that, even if you don't find that there is an effective designation clause, even if you don't give credit to the CCC's own conduct in the arbitration, I think this issue still is as to the terms, a disagreement as to the terms of this agreement of the CLA. Thank you. Thank you, counsel. Thank you. Ms. Blais. Thank you. I'll be brief. I just wanted to just address the limited language discussion. The court discussed section 31, but section 30 also excludes the issues related to gaming operations and revocation suspension proceedings, which are under the authority of the commission. The casino license agreement clearly shows that the parties intended to limit the scope of the arbitration and exclude the commission's authority to suspend and revoke for violations of laws and regulations related to gaming operations and activities. And I just wanted to point to the court that the reason why we're before you today is because the district court did not independently make the arbitrability as to each individual complaint as required by the Federal Arbitration Act. The court did not even consider the limited language in these provisions, and we ask that this court please consider each of the individual claims and decide whether or not they are arbitrable or not arbitrable. Well, do you argue that any of the individual claims are arbitrable? We don't believe that any of the claims are arbitrable. We don't think that they apply to the dispute resolution provision in section 30 of the casino license agreement. They are all violations for statutory and regulatory obligations that IPI has failed to make. And they're all under – you would argue that all the claims are under Section 31 license suspension or revocation proceedings? Yeah, yes. They are – we believe that they would be material violations of CNMI law and commission regulation. In conclusion, the appellant, Casino License – sorry, Casino – Commonwealth Casino Commission respectfully requests this court to reverse the district court's order compelling arbitration as to the issues related to gaming operations and violations of statutory and regulatory obligations not arising under the CLA and as to facts and conclusions of law determined in Commission Order 2021-302. Thank you. Thank you. This case is taken under submission. Counsel, thank you both for your arguments this morning. They were very helpful.
judges: BADE, BUMATAY, SANCHEZ